## NEW ORLEANS *v.* GAINES.

1. Where a master, on reference, has followed the order of the judgment and enforced its directions, no objection can be taken, on appeal, to what he has done when the appeal arises upon exceptions to his report, and not on objection to the original judgment under which the reference to him was made.

2. Though by the law of Louisiana a defendant, ordered by judicial decree to restore possession of real estate which it has been adjudged that he has held, *malâ fide*, during his whole term of possession, have a right, if the party recovering as true owner desire to retain improvements which the possessor, *malâ fide*, has put on them, to demand the value of the materials and price of workmanship of such improvements; yet where, in a peculiar and complicated case, in which specific amounts and estimates were not possible to be made, and the case had to be adjusted largely on a system of equitable compensations, if the party finally dispossessed have, by the decree, received in fact and good conscience the value of his improvements, the court will not allow him to call for another and more specific payment.

3. The possessor, in continuous bad faith, of real estate which the true owner at last recovers, is chargeable, under the claim of *mesne* profits, with what the premises are reasonably worth annually, and interest thereon

---

\* White *v.* Hart, 13 Wallace, 646; Von Hoffman *v.* The City of Quincy, 4 Id. 535.

to the time of the trial.   An allowance of five per cent. interest in a Louisiana case held to have been proper.

4. On a claim for *mesne* profits by a true owner against a possessor in continuous bad faith, there is nothing in the Civil Code of Louisiana which limits the claim to profits for three years.  On the contrary, the rule of English equity there prevails, and a decree is properly made of profits from the time that the complainant's title accrued.  In the present case the profits of fifteen years were given, with interest on them at five per cent.

APPEAL from a decree of the Circuit Court for the District of Louisiana; the case being thus:

In the year 1856 Mrs. Myra Clark Gaines filed a bill in the court below against the city of New Orleans, in which she sought to recover valuable real estate in New Orleans owned by one Daniel Clark, including a certain block or square described, on which a draining-house and out-buildings, with a draining-machine for draining the city, was now and had been for many years situated.

The bill alleged that she was the only and legitimate child of Clark; that Clark had left a valid will, made in 1813, by which he devised all his estate to her; that this will having been lost or destroyed, and she a minor till 1827 and ignorant of her parentage and rights, a provisional will, dated in 1811, of which Richard Relf and Beverly Chew were executors, and Clark's mother, Mary Clark, was universal legatee, was admitted to probate and ordered to be executed; that the will of 1813, which revoked the will of 1811, was subsequently found, and, in 1856, established; that Relf and Chew, under pretended authority as executors of Clark and as attorneys in fact of his mother, had, in 1821, without right or authority, and in bad faith, sold this lot and others at public auction to one Evariste Blanc; that Blanc, equally without right or authority, and in bad faith, had sold it and others, by act of sale, on the 26th of September, 1834, to the city of New Orleans; that the city had notice of the fraudulent character of the proceedings of Relf and Chew, &c., and of the worthlessness of the title, &c., which they acquired.  The bill prayed a delivery of the property and an account of the rents and profits.

After a long and expensive litigation, including an appeal to this court, Mrs. Gaines succeeded in her case,* and in pursuance of a mandate from this court, the court below, in June, 1870, entered a decree in her favor; decreeing that she was Clark's only legitimate child, and as his universal legatee was entitled to the lots in question; that the sale by Relf and Chew and that also by Evariste Blanc was wholly unauthorized and illegal, and utterly null and void; and that the city of New Orleans at the time it purchased the property was bound to take notice of the circumstances which rendered the actings and doings of Chew and Relf in the premises utterly null and void, and " ought to be deemed and held, and was thereby deemed and held, to have purchased the property in question with full notice that the sale at auction, under the pretended authority of the said Richard Relf and Beverly Chew, and the said act of sale to the said Evariste Blanc were unauthorized, illegal, null, and void, and in derogation and fraud of the persons entitled to the succession of Daniel Clark. The court further decreed that Mrs. Gaines, as Clark's only and legitimate child and universal legatee, was entitled to the property with all the yearly rents and profits accruing from it since it came into possession of the city, on the 26th of September, 1834, and decreeing an account accordingly, referred it to the master to take the same.

The master reported that the city had never rented the lot on which the draining-house and machinery was built, nor received from it any rents or profits except by an increase of the city revenue, brought about by the fact that the draining-machine had drained a large part of the city, and by making it of use had largely augmented the property in the city that was taxed. While, therefore, he "found it difficult to fix the amount of rents and profits for which the city was liable on this lot," he presented certain facts and figures from which the court could reach an equitable result. These were thus: The city, *it was estimated*, had received

---

* See Gaines v. New Orleans, 6 Wallace, 642.

from increased taxation of *other* property, during the term embraced by the order (including interest), $208,825.

. Now, this particular lot of land, it was testified, was originally worth $200. The buildings erected by the city, independent of the machinery, cost $18,000. The putting up of the machinery was finished July 1st, 1835 or 1836 (some witnesses testifying to the one year and some to the other), and it was testified that a fair rental of the land and building was $2400 a year. The expense of repairs was $500.

The master, accordingly—disallowing to the city the benefit of the "prescription of three years," which it set up against the claim for rents—charged the city on this basis:

| | | |
|---|---|---|
| Rental value from July 1st, 1835, to November 1st, 1870, . . . . . | $84,800 00 | |
| Interest on the rents, at five per cent., . | 72,800 00 | |
| | | $157,600 00 |
| And allowed the city: | | |
| Expenses of repairs, . . . . . | $17,166 66 | |
| Interest on repairs, . . . . . | 15,166 55 | |
| | | 32,333 21 |
| And thus made the city chargeable with the difference, . . . . . . . . . | | $125,266 79 |

On exceptions to his report, one of them was that as the draining-machine and buildings necessary therefor were made and erected by the city, with materials belonging to it, the only right of Mrs. Gaines as to them was, either to keep the same and reimburse to the city their value and the price of workmanship, or to require the city to take away or demolish them; that the obligation, under the law of Louisiana, rested upon Mrs. Gaines to elect which she would do; and that the city had demanded of her, through the master, that she should make such election, and that the master refused to direct or require her so to do, and thus denied the city its rights under the law.

The master to this reported that the city, by its counsel, had cited Article 500 of the Civil Code of Louisiana before him, and stated that it would call upon the complainant (then present) to elect whether she would keep said works and improvements placed upon the land by the city or pay

the city for the same; and the master added that he had "regarded this as a mere notice of what the defendant intended to do at some future time, but as the point was not presented in writing nor subsequently alluded to, he had assumed that it had been abandoned."

In this state of things, and after the disallowance of some other exceptions, the report came before the Circuit Court (BRADLEY, J.). After examining those exceptions the learned justice came to the main matter, the allowance of the $125,266.79. On that subject he said:

"The case of the city is a peculiar one. The estimation of the rents and profits in that case is so uncertain and speculative that I do not feel entirely satisfied as to the decision that should be made. The master evidently felt the same embarrassment."

And after referring to the different estimates made by the master, and specially to the one above given on p. 627, the learned justice said:

"As the master has not signified his adoption of either of these estimates, but has stated the facts to the court for its equitable determination, I have come to the conclusion that it would be equitable and just to set off the profits derived by the city from the drainage-machine for the past thirty-five years against the cost of constructions and repairs, and to charge the city with the rents of the building and land, less the ordinary repairs of the buildings, amounting, as shown by the report, to the sum of $125,266.79. Whilst the profits and advantages of the drainage-machine were indefinite and uncertain in amount, there is no doubt of their reality, nor, if we can place any reliance upon the estimates, is there any doubt of their being amply sufficient to reimburse the city for all its expenditures, including even the rent with which it is charged."

The learned justice of the Circuit Court accordingly ordered a confirmation of the report. From that decree this appeal came.

*Messrs. Miles Taylor and J. McConnell, for the appellant* (suggesting that whereas the draining-machine was finished July 1st, in 1836, and that alone gave the land a value for

rent, a charge for one year too much had in any view, been made), insisted upon certain exceptions, as follows:

1st. That the decree was erroneous in that it had the effect of giving to the complainant the buildings and machinery erected by the city, with the materials and at the expense of the city, without paying the value of the materials and the cost of the workmanship, or any other price whatever.

2d. That the sum of the rents and profits above stated was made up in part by the allowance of interest, at the rate of five per cent. per annum, on each year's rent, from the end of the year. This, it was argued, was in violation of the doctrines of the code of Louisiana of 1825, as shown in its articles 1939 and 1905.

3d. That the refusal to allow the plea of prescription in bar of all rents or profits for the use of the square, which were received by the city more than three years anterior to the institution of the suit on the 26th of December, 1856, was an error.

*Messrs. J. Emott and J. Q. A. Fellowes, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The appeal before the court arises upon exceptions to the master's report only, and not to the original judgment.

1. It is only where the master or the judge, in acting upon his report, has departed from the order of the judgment or has omitted to enforce its provisions, that a just objection can arise. The judgment has decided that the plaintiff was the owner of this property in question in 1834, when the defendant entered into its possession; that then and at all times since the defendant has illegally kept the plaintiff out of its possession, and has itself been in its possession during the same period, and that it obtained and during all this time held such possession wrongfully and in bad faith.

This statement furnishes an answer to the suggestion that the rents and profits were allowed for one year, during

which the city was not in possession. This is not an open question. It is settled by the judgment, and the allowance is in accordance with the decision.

It is also decided, " that the city of New Orleans ought to be deemed and held, and is hereby deemed and held, to have purchased the property in question with full notice that the said sale at auction, under the pretended authority of the said Richard Relf and Beverly Chew, and the said act of sale to the said Evariste Blanc, were unauthorized, illegal, null, and void, and in derogation and fraud of the rights of the person or persons entitled to the succession of the said Daniel Clark." This sale to Evariste Blanc was the source from which the city derived its title to the property in question. During the whole time of its holding, the city was a possessor in bad faith of the property of the plaintiff. The Civil Code of Louisiana declares as follows:

" ARTICLE 3414. The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which in fact belongs to another.

" ARTICLE 3415. The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."

By the same code a possessor in good faith may enjoy the fruits of the property until it is claimed by the owner, and is bound to account only from the time of a demand for restitution. He is also entitled, when evicted, to be reimbursed for the expenses he may have incurred on it. (Article 3416.)

To the same purport are Articles 500 and 501.

" When plantations, constructions, and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them, or compel this third person to take away or demolish the same. If the owner requires the demolition of such works they shall be demolished at the expense of the person who erected them without any

compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained. If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.

"Nevertheless, if the plantations, edifices, or works have been done by a third person evicted, but not sentenced to make restitution of the fruits because such person possessed *bonâ fide*, the owner shall not have a right to demand the demolition of the works, plantation, or edifices, but he shall have his choice either to reimburse the value of the materials and the price of the workmanship, or to reimburse a sum equal to the enhanced value of the soil."

The case of the present defendant is an instance where the works were done, not by one not sentenced to make restitution because such person possessed *bonâ fide*, but by one who was sentenced to make restitution, and who was expressly adjudged to possess *malâ fide*.

Mrs. Gaines, therefore, had the right to keep the improvements upon reimbursing their value and the price of the workmanship, or to compel the city to demolish and remove them. She has not been called upon legally to elect which course she would adopt. On the hearing an oral notice was given that she would be called upon to elect, which the master understood to be in the future, and not a present notice. The matter was never again presented, and the master considered the subject as abandoned. She may now properly rest upon her right to have the works demolished and removed. This would give the city the value of the materials only as taken down at its own expense and when separated from their position upon the land. This allowance has, however, already been made to the city. In the opinion of the judge at the circuit he uses this language: "I have come to the conclusion that it would be equitable and just to set off the profits derived by the city from the drainage-machine for the past thirty-five years against the cost of construction and repairs. . . . Whilst the profits

and advantages (he says) of the drainage-machine are uncertain and indefinite in amount, there is no doubt of their reality, nor, if we can place any reliance upon the estimates, is there any doubt of their being amply sufficient to reimburse the city for all its expenditures, including even the rent with which it is charged."

It is evident from this statement that there has been already allowed to the city a sum not only equal to the value of the materials of the improvements, if they were demolished, but of their actual cost. The city has, therefore, no cause of complaint on this score, and the point under consideration must be held against it.

2. The question of the allowance of interest on the items of rent was not made before the master or before the judge at the circuit, and is not properly before us. Interest was allowed at the rate of five per cent., the rate fixed by the Code of Louisiana. In *Vandevoort* v. *Gould*,* it was adjudged that mesne profits consist of what the premises are reasonably worth annually, with the interest to the time of the trial. "Less than this," it is said, " would not give the plaintiff full and complete indemnity for the injury to his rights." Such is also the express declaration of Article 1939 of the Civil Code of Louisiana.

The Articles of the Code, 1939 and 1905, are not, as it is urged, in hostility to this principle. The latter by its terms relates to contracts. By the former, liens which are due for the restitution of profits bear interest from the day the debtor was in default. By the judgment it is found that the city held this property wrongfully from the outset, and thus (which is the only sense in which the word can here be used) was in default continually.

The remaining question to be considered is upon the allowance of the plea of prescription. It is alleged as error that the plea of prescription was not allowed in bar of the claim

---

* 36 New York, 639, 647.

for all the rents and profits which had accrued more than three years prior to the commencement of the action. The Civil Code enumerates as causes of action which are the subject of the prescription of three years—"the action for arrearages of rent charge, annuities, and alimony, or of the hire of movables or immovables." (Article 3503.) "In general all personal actions except those above enumerated are prescribed by ten years, if the creditor be present, and by twenty years if he be absent." (Article 3508.)

These articles do not govern the present case. They prescribe actions which the party had the legal right to bring. They do not apply to rights like the present, which result from the determination of another action. Until the decree in the main suit there was here no existing cause of action to recover the mesne profits. No special action could be maintained for them until the title to the property should be judicially determined. It is controlled rather by the title "Of the Right of Accession to what is produced by the thing."*

"Fruits of the earth, whether spontaneous or cultivated, belong to the proprietor by right of accession."†

"The fruits of the thing belong to its owner, although they may have been produced by the work and labor of a third person or from seeds sown by him, on the owner's reimbursing such person for his expenses."‡

"The produce of the thing does not belong to the simple possessor, and must be returned with the thing to the owner who claims the same, unless the possessor held it *bonâ fide.*"§

Speaking strictly, there was not only no cause of action, but no right to the mesne profits until the judgment in the original suit.

There is no article of the Code to which our attention is called which limits this claim to the profits for three years. On the contrary, the rules of the civil law and the general principles of equity jurisprudence hold that there is no such limit. It will be observed that this question does not in-

---

* Civil Code, 490–494.    † Article 490.    ‡ Ib. 493.    § Ib. 494.

volve the allowance for improvements or to its extent. That point has been already disposed of, and the defendant has been allowed for the improvements and beneficial structures made by it during the term. We are now endeavoring to ascertain whether the recovery for the rents and profits which have been adjudged to be paid shall be limited as required by the defendant.

The rule is thus laid down in Justinian:

"If any man shall have purchased or by any other means honestly acquired lands from another whom he believed to be the true owner, when in fact he was not, it is agreeable to natural reason that the fruits which he shall have gathered shall become his own on account of his care in the culture; and therefore if the true owner afterwards appear and claim his lands he can have no action against the *bonâ fide* possessor for produce consumed. But this exemption is not granted to him who knowingly keeps possession of another's estate, and therefore he is compellable to account for *all the mesne profits,* together with the land."*

The chancery rule is thus laid down in Peere Williams :†

"Where one is in possession of lands belonging to an infant, if the infant when of age makes out his title, he shall recover the profits in equity from the first accruing of his title, and not from the filing of the bill only. So the defendant shall account for the profits from the time the plaintiff's title accrued, and not from the filing of the bill only, if the defendant has concealed the deeds and writings making out the plaintiff's title."

In *Dormer* v. *Fortescue,*‡ Lord Hardwicke says:

"There are several cases where the court does decree an account of rents and profits, and that from the time the title accrued, as where there is a trust and an equitable title merely, or where a widow claims dower merely, but needs the aid of chancery to find out the lands, the court will give her the profits from the time of the demand not only, but from the time of her title accrued."

* Justinian Inst., lib. 2, tit. 1, § 35.
† Bennet v. Whitehead, 2 Peere Williams, 645.
‡ 3 Atkyns, 128.

In the case before him he decreed an account upon these principles, for a period of fifteen years.

The present action was commenced by Mrs. Gaines nearly seventeen years ago. It was a bill in equity praying for a discovery, for an accounting for rents and profits, and for general relief. After much tribulation she has reached the point of an accounting, which the defendant has brought before us on appeal. We think there is no prescription of the rents and profits, but that the allowance in this respect was properly made.

Upon the whole case we are of the opinion that the decree or order upon the master's report must be affirmed, and the

EXCEPTIONS THERETO DISALLOWED.