# NEW ORLEANS *v.* WARNER.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 281.  Argued December 11, 13, 1900.—Decided January 28, 1901.

The decree heretofore entered upon the mandate of this court, 175 U. S. 120, permitted of no distinction being made between drainage warrants issued for the purchase of the dredging plant of the Mexican Gulf Ship Canal Company, and such as were issued in the purchase of the franchises, and in settlement of the claim for damages urged by the Canal Company and Van Norden against the city of New Orleans.

There was no error in permitting all parties holding drainage warrants of the same class, to come in and prove their claims without formal intervention or special leave, though the validity of such warrants in the hands of their holders might be examined, except so far as such validity had been already settled by the decree.

Warrants to the amount of twenty thousand dollars issued for drainage funds collected by the city and misapplied and appropriated to the general funds of the city were also properly allowed.

THIS was a writ of certiorari to review a decree of the Court of Appeals, rendered May 1, 1900, affirming a decree of the Circuit Court for the Eastern District of Louisiana, rendered March 26, 1900, which overruled certain exceptions of the defendant, the city of New Orleans, to a master's report upon the amounts due under a decree rendered by the Court of Appeals, May 7, 1898, and affirmed by this court January 15, 1900.   175 U. S. 120.

The decree of the Circuit Court of Appeals, affirmed by this court, contained the following paragraphs:

1. That the city of New Orleans was indebted to John G.

Warner in the sum of $6000 with interest, and that he was entitled to be paid such sum out of the drainage assessments set forth in the bill.

2. That such drainage assessments constituted a trust fund in the hands of the city for the purpose of paying the claims of the complainant and holders of the same class of warrants issued under the act of sale from Warner Van Norden, transferee, to said city under authority of act No. 16 of the legislature of Louisiana, approved February 24, 1876.

3. That it be referred to a master to take and state an account of all said drainage assessments; that warrant holders be entitled to establish their claims before the master without formal interventions or special leave of the court, and that, upon the coming in of his report, complainant and other claimants would be entitled to an absolute decree for the amounts due them, if the fund established by the accounting be sufficient, but if not sufficient to pay such claims in full, then for the proper *pro rata* thereof, etc. The other provisions of the decree are immaterial.

Upon this reference warrants to the amount of $316,000, of a total of $320,000, ($4000 having been paid,) were presented by different parties, including Warner, and the master found, (1) that all these warrants were "issued to Warner Van Norden, transferee of the Mexican Gulf Ship Canal Company, by the defendant, the city of New Orleans, in payment of the consideration of the agreement and contract of sale between himself and said city, by act (of sale) . . . dated June 7, 1876, as in said act specified, pursuant to the authority of the act of the legislature of Louisiana, No. 16, dated February 24, 1876, as set forth in the complainant's bill, etc.; . . . that each of said warrants was indorsed in blank by Warner Van Norden, transferee, to whose order they were made payable, and delivered to said claimants, or other parties through whom they have acquired title; and that the said Van Norden has since . . . formally transferred to the complainant, and to all holders of warrants who might intervene in this cause, any and all interest he ever had in said warrants, and subrogated them to all his rights of actions and remedies against the defendant appertaining to the same."

Exceptions were filed to this report upon the ground (1) that the advantages of the decree extended only to such warrants as were issued in payment of the property purchased by the act of sale, which said property as shown by the inventory and appraisement of T. S. Hardee, city surveyor, amounted to $153,750; " that the balance of drainage warrants issued under said act were not in payment of the price of the property thereby sold, and hence were not purchase warrants in the sense of the opinions and decrees of the Circuit Court of Appeals and of the Supreme Court herein; that such balance of said warrants were issued in settlement of a claim for damages urged by the Mississippi and Mexican Gulf Ship Canal Company, and Warner Van Norden, against the city of New Orleans." (2) " That of said warrants the sum of $20,000 were issued, as will appear by the express terms of the act, in payment of work which had been done by said Van Norden, that is, digging canals and building levees, which, at the time of the passage of said act, had not been surveyed or measured by the city surveyor; and hence, that as to these warrants there could be no recovery or allowance made."

In a supplemental report upon these exceptions the master found that the city issued warrants Nos. 313 to 392, inclusive, in discharge of the consideration of the agreement of sale passed before Le Gardeur, notary public, amounting to $300,000, and also issued warrants, Nos. 393 to 402, inclusive, aggregating $20,000, not for work, but as a compromise for drainage taxes collected and misappropriated, as stated in the said act of sale.

*Mr. Branch K. Miller* for the city of New Orleans. *Mr. Samuel L. Gilmore* and *Mr. Frank B. Thomas* were on his brief.

*Mr. Wheeler H. Peckham* for Warner and others. *Mr. Richard De Gray* filed a brief for same. *Mr. J. D. Rouse* and *Mr. William Grant* filed a brief for same.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

1. The second assignment of error filed in the Circuit Court, adopting the substance of the exceptions to the master's report, raises a distinction between the drainage warrants issued for the purchase of the dredge boats, derricks and other tangible property of the ship canal company, appraised at $153,750, and such as were issued in the purchase of the franchise and in settlement of the claim for damages urged by the canal company and Van Norden against the city of New Orleans. No such distinction, however, appears in the decree of the Circuit Court of Appeals, affirmed by this court in 175 U. S. 120, which declared that the drainage assessments set forth in the bill should constitute a trust fund in the hands of the city for the purpose of paying the claims of complainant *and other holders of the same class of warrants* issued under the act of sale from Van Norden to the city, and referred the case to a master to state an account of all the drainage assessments, before whom all warrant holders were to be notified to appear and establish their claims, without being required to file intervention or to obtain special leave of the court. Pursuant to this notice the warrant holders did appear and presented their warrants, which were allowed. The decree did not permit of any distinction being made and none was made between warrants issued for the purchase of the property and such as were issued in purchase of the franchise or in settlement of damages, and it is difficult to see in what respect the master or the court departed from the decree of this court.

As the bill was brought by Warner on his own behalf, as well as on behalf of all other parties holding obligations of the same nature and kind, there was no error in permitting all such parties to come in and prove their claims without formal interventions or special leave. All the warrants allowed belonged to the same class as Warner's, and were issued upon the same consideration. This is the method commonly resorted to in bills for the foreclosure of railway mortgages, or other securities, under which bonds have been issued and are widely scattered in the hands of holders, many of whom are unknown and impossible to ascertain except by advertisement. In cases of this character decrees are treated as decrees in favor of all in like

situation as the plaintiff who come in and claim the benefit of them. *Richmond* v. *Irons*, 121 U. S. 27; *Brooks* v. *Gibbons*, 4 Paige, 374; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Hammond* v. *Hammond*, 2 Bland, 306.

Doubtless the validity of these claims in the hands of holders may be examined, except so far as such validity has been already settled by the decree; but where the master upon the reference has followed the decree and enforced its directions, no objection can be taken upon appeal as to what he has done, when the appeal arises upon exceptions to his report. *New Orleans* v. *Gaines*, 15 Wall. 624. The master was powerless to entertain any objection to the decree or any proposal for its modification. His duty was simply to carry it out according to its terms.

It should be stated in this connection that no such distinction between the different classes of warrants as is now made was called to the attention of this court when the case was here upon questions certified, 167 U. S. 467, or upon the merits, 175 U. S. 120. In fact, the present exceptions to the master's report obviously involve an attempt to set up a new defence as to a part of these warrants, after the merits of the case have been fully considered and disposed of. This is impossible. *Yazoo &c. R. R. Co.* v. *Adams, ante,* 1; *Supervisors* v. *Kennicott*, 94 U. S. 498.

But considering the question to be still an open one, and that we are at liberty to inquire whether the court exceeded its authority in decreeing the payment of these warrants, without reference to whether they were given for the purchase of the property or franchises, or the settlement of damages, the result would not be different. It was evident there had been a claim for damages pending a long time against the city. By the act of February 24, 1871, No. 30, "to provide for the drainage of New Orleans," the former boards of drainage commissioners were abolished, and their assets transferred to a board of administrators, who were "subrogated to all the rights, powers and facilities" possessed by the commissioners. The ship canal company was authorized to undertake the work of draining the city, and by section 6, it was made the duty of the board of

administrators "to locate the lines of the canals and protection levees, specified in the various sections of this act, in time to prevent delay in the prosecution of the work of the said company. . . . And should the city council fail to locate the lines of said canal and protection levees above specified, the city of New Orleans is hereby made liable to the said company for the *damages* resulting from such delay."

By the act of February 24, 1876, No. 16, authorizing the city to control its own drainage and to purchase the property of the ship canal company, the common council was empowered "to transact and contract" with the ship canal company, and its transferee, "for the purchase and settlement of all or any rights, franchises and privileges created, authorized or arising in favor of said company or said transferee under and by virtue of act No. 30, of acts of 1871; also, for the purchase and transfer to the city of New Orleans of all tools, implements, machines, boats and apparatus belonging to said company or its transferee," etc. It will be observed that the city is invested with a double power: First, to *transact* and contract for the purchase and *settlement* of any rights, franchises, privileges, etc., and the other for the purchase and transfer of the dredging plant. The word "transact," which seems ambiguous here, is explained by article No. 3071 of the Civil Code of Louisiana, which defines "a transaction or compromise" to be "an agreement between two or more persons, who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent." By the second clause of the section the purchase and transfer of the dredging plant was authorized.

Pursuant to this act the city surveyor was authorized by ordinance of April 26, 1876, to examine the condition and value of the dredging plant, making a report to the committee of the whole, "together with a statement of all information in the possession of his office concerning *damages* claimed by said . . . canal company, or transferee thereof." In compliance with this ordinance he appraised the value of the dredging plant at $153,750, and stated that the damages claimed by the transferee were for delays at various times and places, and further stated that he was unable to arrive at a conclusion as to their amount, and

did not feel called upon to express an opinion; but that he had no doubt the committee, from the facts stated, would be able to arrive at a just and satisfactory conclusion. This left the common council free to settle for the damages without an appraisement. Under these circumstances the failure to appraise the damages would not vitiate their settlement.

By a further ordinance, adopted May 26, 1876, the mayor was authorized to enter into an agreement with the canal company for the purchase of its plant, and " also for the full settlement of all claims for damages, and to secure the absolute sale, relinquishment and transfer to the city of New Orleans of all rights, privileges and franchises," etc., and upon the execution of the agreement to draw upon the administrator of finance for the sum of $300,000 in drainage warrants, in full settlement, as above provided.

Conceding that the power given by the act of 1876 to transact and contract with the canal company for the purchase and settlement of all or any *rights*, franchises and privileges, is somewhat ambiguous as the source of a power to compromise for *damages*, the practical construction put upon that act by the ordinances of April 26 and May 26, 1876, as including claims for damages, is entitled to great weight, particularly in view of the long subsequent acquiescence of the city in that construction.

By the act of sale executed June 7, 1876, the canal company transferred its dredging plant to the city, as well as its franchises, privileges, contracts and advantages, and subrogated the city to all its rights, actions and remedies, in consideration of the sum of $300,000; and the president and secretary of the canal company, and Van Norden, their transferee, also agreed that the above amount should be in full settlement of " all existing claims for damages" which either of them " ever had, or have now, or may have against the said city of New Orleans."

It is difficult to see how the intention of the city to settle all these claims could be made clearer, or the terms of the actual settlement more sweeping than they were by these proceedings. What the items of damages were does not appear,

As to what influences were brought to bear upon the common council to induce it to pay so large a sum as $146,250 for these damages, we are equally in the dark. Certainly we are not at liberty to impute corrupt motives to the council. The arrangement may have been an unfortunate one, but the arrangement as made is beyond doubt.

It is obviously impossible to distinguish as between these warrants, and to say that such were issued in payment of the plant, and such others for the purchase of franchises and in settlement of the damages. Granting the position taken by the city to be correct, it would result that all the warrants must be scaled down *pro rata* in the proportion of about fifty per cent, which would obviously be unfair to those who received purchase warrants, or there must be some attempt to classify these warrants. But as the warrants were all alike in form, no such classification is possible. It is suggested by the city that it must be considered that the warrants were issued and applied in the numerical order of their execution: First, for the payment of the price of the property purchased; next, for the claim for the settlement of damages; and lastly, for the payment of work mentioned in the said notarial act. But this would result in the rejection of the Warner warrants, which were expressly allowed by the decree of this court to the amount of $6000, since it appears by the report of the master that the warrants issued to Warner and allowed by such decree were Nos. 379, 380 and 381, and did not fall among the first $153,750 issued, but were payable long after this amount, appraised as the value of the plant, had been exhausted. It would also result in the disallowance of certain warrants to Wilder & Company, upon which a judgment at law was recovered on May 24, 1898, after the case had been remanded from the Circuit Court of Appeals. Obviously the position of the city in respect to these warrants is untenable.

2. The only other item to which exception is taken is one of $20,000, for which warrants Nos. 392 to 402, inclusive, were issued as a compromise of drainage taxes collected by the city and misappropriated. These were in excess of the $300,000 allowed in payment of the plant and various claims of the canal

.company, and were especially provided for in the act of sale as follows: "That inasmuch as it has been claimed that certain collections of drainage funds have been applied by the previous administrators to general fund purposes, the said city of New Orleans will issue to the said W. Van Norden the sum of $20,000 in drainage warrants in full satisfaction of the same."

The authority to include this in the act of sale is questioned by the city, but we think it comes within the first section of the act of 1876, which provides for "the purchase and settlement of all or any *rights* . . . arising in favor of said ship canal company, or said transferee," under the act of 1871, and within the ordinance of May 26, to which allusion has already been made, which provides for "the full settlement of all claims for damages and to secure the absolute sale, relinquishment and transfer to the city of New Orleans of all *rights* . . . arising in favor of the canal company." Money collected by the city, applicable to the drainage funds, and appropriated to the general funds of the city, manifestly creates a *right* in favor of the canal company to a restoration of the amount. If there were doubt of the proper construction of these words the long acquiescence of the city and the failure to raise an objection to this claim until after final decree is sufficient to put the matter at rest.

The decree of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE WHITE and MR. JUSTICE PECKHAM took no part in this case.