PROVO STY, J.
Joseph Shaw, Sr., the grandfather of the plaintiffs, was twice married. He had issue by his first marriage three children, now dead, the parents of the plaintiffs and of Jodie Shaw, one of the defendants. He had issue by his second marriage seven children. One of the latter, named Kittie, died in childhood, but after her father. The six others and their mother and Jodie Shaw are the defendants in the case. The suit is for a partition by licitation of the property belonging to the community of acquets and gains that existed between Joseph Shaw, Sr., and his first, wife, the grandfather and grandmother of plaintiffs and of Jodie Shaw. This property consists of a farm. Joseph Shaw, Sr., grandfather of plaintiffs, continued in possession of this farm after the death of his first wife, the grandmother of plaintiffs. After his death, which occurred some 20 years before the filing of this suit, his second wife, the stepmother of the parents of the plaintiffs, Mrs. Mollie Hamilton Shaw, continued in possession, and enjoyed all the fruits and revenues of the property. The present suit includes a demand against the principal defendant, Mrs. Shaw, the stepmother of the parents of the plaintiffs, for the share of the plaintiffs in these fruits and revenues. The plaintiffs claim as heirs of their grandparents, and also as heirs of their deceased half-sister, Kittie. Jodie Shaw’s interests are the same as those of plaintiffs. She was made a defendant merely because this form of proceeding simplified matters; she being a minor. Her tutrix filed answer, joining plaintiffs in their demand against the other defendants. The latter aver in their answer that Joseph Shaw, Sr., the grandfather of plaintiffs and of Jodie Shaw, settled in full with the parents of plaintiffs and of Jodie Shaw for their interest in the succession of his first wife, the grandmother of plaintiffs and of Jodie Shaw; and that the second community paid $200 of the debts of the first community. They make no other defense, except that in part offset of the demand for fruits and revenues Mrs. Shaw pleads the taxes paid by her on the property and claims compensation for improvements.
[1] In support of the allegation that Joseph Shaw, Sr., settled with the children of his first marriage, the defendants produced the written acknowledgment to that. effect of two of these children, viz., Mollie and Sallie, and have offered the testimony of a witness to the effect that Joseph Shaw, Sr., said that he had settled with the third child. This testimony was clearly hearsay and inadmissible. The heir of Mollie Shaw, viz., Wiley ’ Anderson, and the heirs of Sallie Shaw, viz., John Knott, Robert M. Knott, Jos. W. Knott, Mattie Knott-Cabiness, and Duda Knott Anderson, have no claim as heirs of their grandmother. But the heirs of Joseph Shaw, Jr., third child of Joseph Shaw, Sr., viz., Vice E. Shaw, Martha Shaw, Eula *665 Shaw Austin, and Jodie Shaw, are entitled to claim, as heirs of their grandmother, one-third of one-half of the property in question —that is to say, one-third of her estate— less, however, one-third of one-half of the $200 paid by the second community for the first community.
There is no dispute that each of the children of Joseph Shaw, Sr., inherited one-tenth of his estate, the three deceased children of the first marriage being now represented by their children; and that the latter inherited in equal parts the estate of their respective parents; and that the interest of Kittie Shaw, deceased, passed to her heirs, and is now held by them in the following proportions: (1)One-fourth thereof to her mother, Mrs. Mollie Hamilton Shaw; (2) one half of the remaining three-fóurths to her sisters and brothers of the full blood; and (3) the other half of the remaining three-fourths in equal parts to her brothers and sisters, both of the full and of the half blood.
The sisters and brothers of the full blood are Bird Shaw, Fred Shaw, Leila Shaw Reeves, Nina Shaw Powell, Ellen Shaw Lewis, and Alma Shaw Tabor.
In fixing the amount of the estate of Joseph Shaw, Sr., there must t be deducted therefrom the one-half of the $200 paid by the second community in satisfaction <of the debts of the first community.
[2] The learned trial judge fixed at $75 per year the amount of the fruits and revenues. Plaintiffs and appellants complain that this is entirely too low. We think the finding is based upon the evidence. But the learned judge did not give interest on these fruits and revenues, although plaintiffs prayed for them “from the end of each and every year since the year 1890.” He should have done so. C. C. art. 1944; New Orleans v. Gaines, 15 Wall. 624, 21 L. Ed. 215. As, however, we are unable to say at what date in the year 1890 the grandfather died, we cannot, with certainty, fix sooner than December 31, 1891, as the date when the first yearly rent became due. Mrs. Mollie Hamilton Shaw owes rents and revenues at the rate of $75 per year, with interest thereon at the legal rate of 5 per cent, per annum on each $75 from the date it fell due, namely, the 31st of December of each year, beginning with the 31st of December, 1891, and continuing so long as the defendant Mrs. Mollie Hamilton Shaw shall continue in possession of the property asked to be partitioned; and judgment must be rendered against her and in favor of plaintiffs and of Jodie Shaw for said rents and revenues in the same proportion in which the said plaintiffs and the said Jodie Shaw are owners of the said property.
[3] The judgment appealed from allows to the defendant Mrs. Shaw the full amount of the taxes paid by her, although all of these taxes were not paid on the property in controversy. As a matter of course, Mrs. Shaw can recover only the taxes paid on the property in controversy, and can recover nothing at all on this head, unless she can show with reasonable or legal certainty what proportion of these taxes was for the property in controversy.
[4-6] Mrs. Shaw having been a possessor in bad faith, the plaintiffs are not bound to kéep the improvements which she claims to have put upon the property, but may require her to demolish same and take same away. O. C. art. 508. But this, in the nature of things, applies only to those things which can be removed, namely, the tenant house, the cow shed and barn, and the fencing, and, perhaps, to the addition to the house. For the repairs to the smokehouse, she is entitled to recover, as of right; the same having been for the preservation of the property. O. O. art. 2314. For the item, “house, lumber and work on it (old), $250,” she is entitled to the amount of her expenses, in so far as same were for the preservation of the house. In so far as they were not for *667 the preservation of the property, she is entitled to compensation only to the extent that by said expenses the value of the property in its present condition has been enhanced. In like manner as to the items “Clearing of land, $15,” “Clearing of land, $50,” “Well curbing and work digging well, $30.” “Orchard, planting, etc., $25,” she is entitled to compensation only in so far as the value of the property in its present condition has been enhanced by these expenses. Any profit or benefit she may have derived from the sale or use of the timber in clearing the land would, of course, have to be deducted from this enhanced value. Voiers v. Atkins Bros., 113 La. 303-333, 36 South. 974, on rehearing. Should plaintiffs elect to keep those improvements that are susceptible of removal, 'they (the plaintiffs) shall have the choice either to reimburse the value of the materials and the price of the workmanship, or to reimburse a sum equal to the enhanced value of the soil.
For convenience in recasting, we set aside entirely the judgment appealed from.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this case be remanded for further trial in accordance with the views herein above expressed.