# ANA MARIA HERNANDEZ ET AL., Plffs.,

## *v.*

# J. OCHOA Y HERMANOS ET AL., Dfts.

San Juan, Equity, No. 586.

RENTS AFTER DECREE OF POSSESSION.

Master—Finding of Rental.

1. Where a question of finding the rental value is referred to the master, his report will be reversed if he finds interest instead.

Use and Occupation—Civil Law.

2. At common law compensation for the rental value follows as a matter of course on a judgment for the land itself; but at civil law the question of good faith must first be considered. Good faith is always presumed, but legal bad faith may coexist with personal good faith.

Civil Law—Good Faith.

3. Legal bad faith begins from the time that the party is on notice of facts showing that he is wrongfully in possession, as from citation in a suit for possession. The result is that the fruits received belong to the possessor in good faith until, but not after, his citation in a suit. Fruits after that time go to him who wins the suit.

Good Faith—Rents on Reversal.

4. If the appellate court declares the party in possession in good faith, any fruits or rents which the opposite party may subsequently recover must go back, not to the original citation, but the decree in the main suit.

Mesne Profits—How Ascertained.

5. Mesne profits consist of what the premises are reasonably worth annually, with interest at the time of the trial. A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected under all the circumstances of each case.

Hernández v. Ochoa y Hermanos.

Mesne Profits—Pending Suit.

> 6. A possessor originally in good faith is not to be punished as an insurer of all the profits which the land could possibly have produced. He is liable for what the property could fairly be held to have actually produced taking the average run of years, and taking into account the regular cultivation and distance from market.

Opinion filed January 28, 1915.

———

*Messrs. Jos. Anderson, Jr.,* and *H. H. Scoville* for plaintiffs.

*Mr. T. D. Mott* for defendants.

HAMILTON, Judge, delivered the following opinion:

This cause now comes on to be heard upon exceptions to the report of the standing master finding that the defendants Ochoa should pay to the plaintiffs Hernandez the sum of $888 for withholding possession of certain 106 acres of land in the Barrio Nuevo, Naranjito. The main case was a proceeding in this court to establish the right of complainants Hernandez to the above land, with cancelation of certain conflicting entries in the Registry of Property, and resulted in a decree for the complainants Hernandez, all as more fully set out in the report found in 5 Porto Rico Fed. Rep. 463. In that case the court found that "the defendants bought from Morales in good faith, and always were ignorant of the rights of complainants in and to said lands," and the opinion declares that the Ochoas are innocent purchasers for value. The bill prays for mesne profits, but the decree refused them. The

case was appealed by Ochoa to the Supreme Court, where the opinion of this court was affirmed June 16, 1913. Ochoa v. Hernandez y Morales, 230 U. S. 139, 57 L. ed. 1427, 33 Sup. Ct. Rep. 1033.

No question is made in this proceeding that possession has not been finally delivered, but it is alleged in the motion, which is the foundation of the present proceeding, that the complainants are entitled to compensation for being kept out of the property since the final decree of this court of April 14, 1910, from which the appeal was had, for four years. There was a hearing on this question beginning April 17, 1914, but the court was not satisfied with the testimony, and referred the matter of such compensation for use and occupation to the master. The master reported December 9, 1914, allowing the above sum of $888, being 6 per cent running on the assessed value of $3,700. To this report Ochoa filed exceptions, and these are now before the court.

1. The master seems to have been unable to come to any conclusion as to actual rental value, and reports interest upon the assessed value. Ordinarily legal interest is a proper basis for the detention of money allowed by judgment. This, however, is not a money judgment, and if it were the assessed value is not the proper basis. The principle upon which the public authorities proceed as to taxation is, of course, satisfactory to them, but it affords no rule for this court in suits between individuals. More particularly is this true in the case at bar, where Ochoa himself in a sworn application, in order to secure an appeal, declared the value of the property to be $5,000. The defendant could not be permitted to blow hot and cold, fix a high value in order to secure an appeal, and then a low

value to relieve himself as far as possible from the results of that appeal. For the purposes of this case the value of the property as against Ochoa is to be held as $5,000. If interest is the basis, therefore, the amount would be $300 a year, or $1,200 for the four years which it is agreed is the period of controversy.

The report of the master is therefore reversed in this particular, and the court will proceed upon the proved facts to determine the proper compensation.

2. The order of reference to the master did not discuss the basis of the defendant's liability, but implied that he was liable for the use and occupation during the four years in question. At common law compensation for the rental value follows as a matter of course on a judgment for the land itself. Cahall v. Citizens' Mut. Bldg. Asso. 74 Ala. 539; Woodworth v. Northwestern Mut. L. Ins. Co. 185 U. S. 355, 46 L. ed. 945, 22 Sup. Ct. Rep. 676.

Such, however, is not the rule under the civil law. There another question—that of good faith—enters into the decision. The Civil Code in § 436 (which is art. 433 of the Spanish Civil Code) defines a possessor in good faith as follows: "A bona fide possessor is deemed to be the person who is not aware that there exists in his title, or in the manner of acquiring it, any flaw invalidating the same."

Section 437 (which is art. 434 of the Spanish Civil Code) declares that "good faith is always presumed, and any person averring bad faith on the part of the possessor is bound to prove the same." Also important are §§ 454 (Spanish art. 452) and 457 (Spanish art. 455). They are as follows:

"Sec. 454. If, when good faith ceases to exist, there are any

Hernandez v. Ochoa y Hermanos.

natural or cultivated fruits still ungathered, the possessor shall have the right to recover the expenses he may have incurred in their production, and, moreover, to a part of the net proceeds of the crop in proportion to the duration of his possession.

"The cost shall be distributed, in like manner, *pro rata* between the two possessors.

"The owner of the thing may, if he wishes, grant to the possessor in good faith the right to complete the cultivation and harvesting of growing fruits, as indemnity for his part of the cost of cultivation and net proceeds; the possessor in good faith, who, from any motive, does not care to accept this concession, forfeits the right to be otherwise indemnified."

"Sec. 457. A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected, and shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing. Expenses incurred in improvements for luxury and pleasure shall not be refunded to the possessor in bad faith; but he may remove the objects for which such expenses have been incurred, provided the thing suffers no injury thereby, and the lawful possessor does not prefer to retain them and pay the value they may have at the time he enters into possession."

Legal bad faith, therefore, may coexist with personal good faith, corresponding somewhat to the difference between fraud in fact and law at common law.

3. The commentators hold that bad faith begins from the time the party is on notice of legal facts showing that he is wrongfully in possession. For instance, as Manresa expresses it: "His illusion necessarily disappears after the unlawfulness of his possession is known, from the time that he has become

VII. Porto Rico—29.

Hernandez v. Ochoa y Hermanos.

acquainted with the complaint, and from the time that he has been legally cited for the suit. This is the moment of the interruption of his possession according to article 1945 of the Spanish Code [which corresponds to § 1846 of the Porto Rico Civil Code], and from that moment he ceases to have the right to the fruits mentioned in art. 451 [Porto Rico, § 453]. The judicial declaration goes back or retroacts to that moment. . . . From the moment of judicial citation there exists an act which demonstrates that the possessor knows that his right is not firm, that it is questioned, that it can be taken away from him, and if the tribunals declare that restitution is proper, then that moment determines all the legal consequences of the interruption, the period during which the possessor in good faith no longer had that character in the eyes of the law. The decisions affirm that even the possessor in good faith must restore the fruits received from the time the complaint is answered, or from the time he knew of the unlawfulness of his possession." Manresa Com. vol. IV. pp. 269, 271. Manresa seems dissatisfied with this result, but declares it to be the meaning of the law (pp. 277, 293).

To the same effect is the commentator Scaevola. In his commentary on Spanish article 451 (the same as § 453 of Porto Rico Civil Code), he says:

"Possession carries with it the right to receive the fruits of the thing possessed. The fruits received are the property of the possessor as long as he has this character, and as he does not lose it until he is defeated in a lawsuit, to deprive him of the fruits would be to deprive him of what belongs to him. It may be argued against the general application of the rule which we have just stated, but we shall clear up this concept

Hernandez v. Ochoa y Hermanos.

by saying that it is applicable only to the possessor in good faith. The possessor in good faith is presumed to so possess until it is proven that his possession is vicious; once bad faith is proven, it is deduced that the possessor in bad faith has never possessed. For that reason this last person must return or restore the fruits received while they are granted to the possessor in good faith, which in effect is to give him only what belongs to him. Until some person comes to defeat him in the possession, this possession is legal, and although he may be defeated, the effects of the victory cannot be taken further back than to the moment in which the contest began. Until then he has been a legitimate possessor with all the natural effects, among which figures, as one of the most important, the right to receive the fruits.

"The right to receive the fruits (this is what at bottom article 451 determines when it does not oblige the possessor in good faith to return those received) lasts until the possession is legally interrupted. The reason is obvious, until the aforesaid moment he is a possessor with all the guaranties and consequences of the law. . . .

"Every possessor enjoys the presumption that he is a possessor in good faith; that he may lose this character it must be proven that he possesses in bad faith, a proof which requires a suit. In this suit the title by which the possession has been transmitted, or the manner in which it was acquired, must be discussed; and also the existence of the title or the knowledge of its vices in case these exist.

"But the lawsuit is not an isolated act, nor is it decided in a moment; it consists of a series of acts and of a period of time more or less lengthy. From what instant of time must we con-

Hernandez v. Ochoa y Hermanos.

sider the possession to be interrupted for the purpose of receiving or not the fruits? If the right to receive the fruits depends upon the fact of the existence of the good or the bad faith in the possessor, it must be clear that there should not exist interruption until such point is categorically affirmed, which does not happen until the act or the moment in which the corresponding declaration is made, that is to say, until judgment is pronounced and appeal no longer lies. This is indisputable Until judgment is pronounced the nature of the possession is unknown; it cannot be known whether one possesses rightfully or not, and therefore it is impossible to determine legally anything with regard to the right to receive the fruits. In this sense, carrying the principle to its final consequences, it is proper to say that the actual possessor, the person who is in possession at the moment that the possession is interrupted, should continue to receive the fruits, even during the lawsuit, until it is determined whether there exists good or bad faith. It may happen that he who has filed a suit may withdraw the same, and then, in strict juridical rigor, it would be improper to deprive the possessor of the right to receive the fruits while his bad faith is not proven.

"But another consideration arises: It is just that the possessor should not lose his right to receive the fruits, until he is defeated in his right to the possession, but, judgment being once pronounced, it is necessary to give it retroactive effect back to the moment when this possession was interrupted. What moment is this? According to our understanding it is the moment of the citation with the complaint. We base this statement upon two reasons: First, the language of the article which speaks of the interruption of the possession, and this

takes place from the time of the complaint; secondly, and principally, because from that moment the character of the possession is changed from good faith into bad faith, and until then the possessor who is ignorant of the vices in his title is a possessor in good faith; but after that moment, he becomes converted into a possessor in bad faith, because in the complaint the vices in his title are set forth and made known to him, and therefore he should not receive the fruits thereafter produced by the thing possessed." Scaevola, Compilation, vols. VIII. and IX., pages 602–605.

And in commenting on article 445, Civil Code of Spain (§ 457, Porto Rico Civil Code), Scaevola says, under the caption, Possessor in Bad Faith—Restitution of Fruits:

"The Code carries its rigor concerning the possessors in bad faith to the point of imposing upon them a punishment in a maximum degree. In effect, it declares them responsible for the fruits received and for those which they could have received; because of their silence, evidently intentional, it deprives them of the improvements made on the thing possessed, and with extreme harshness it imposes upon them a responsibility on account of the deterioration or loss which the thing suffers, and even those caused by *vis major* when he has maliciously delayed the delivery of the thing to its lawful possessor.

"Let us examine the foregoing with reference to the restitution of the fruits. As we have formerly stated, the Code has abolished the distinctions established in the law of Partidas between possessors in bad faith with title and without title. Placing them upon the same level, and perhaps remembering the ancient maxim that the possessor in bad faith loses

Hernandez v. Ochoa y Hermanos.

everything, it has declared them responsible not only in regard to the fruits received, but with regard to the fruits which could have been received. This appears from the conjunctive conjunction by which they are united in the first paragraph of the article on which we are commenting. By virtue of this, if the possessor conducts himself as a good father of a family and carefully cultivates the fields, although on account of unforeseen circumstances, such as failure of rains, excess of humidity, prevalance of a disease among the plants, invasion of a plague, the lands produce only a short crop, the possessor in bad faith shall only have to make restitution of what is actually produced; but if he should act with abandonment or negligence and the fields, instead of producing four, taking into consideration the conditions of the year from an agricultural standpoint, only render two, then the possessor in bad faith shall have to make restitution of the fruits actually produced and in addition the value of the amount of products equal to that which he has failed to get as a result of his fault or negligence.

"It might result that the possessor in bad faith, convinced of his advantageous position and fearful that the legitimate owner of the estate occupied might begin a revindicatory action, allows the estate to be abandoned and without cultivation. In such a case the payment for the fruits would embrace the entire amount of those which the property would have been able to produce, taking into consideration the condition of the year from an agricultural standpoint and the solicitous care of the good father of a family. . . . The return of the fruits, we have already stated in commenting upon articles 451 and 452, supposes a judicial judgment, because it is im-

Hernandez v. Ochoa y Hermanos.

possible to arrive at a definite decision regarding the good or the bad faith of the possessor without a suit having taken place, without a controversy in which there is discussed and proven the ownership of a third party or his better right to the possession. . . ."

Scaevola, Compilation of vols. VIII. and IX., pages 693–695.

And, finally, at.pages 696 and 697, Scaevola presents the legal question in the following manner: "The fruits received belong to the possessor in good faith until the citation with the complaint. Those which are gotten afterwards shall have to be returned to him who wins the suit of possession or ownership. This doctrine is justified because, counting from the aforesaid moment, the possessor already knows the defects of his possession and the good faith is interrupted. Well then: If the possessor in good faith continues in possession during the course of the suit, shall he have to make restitution not only of the fruits received, but also of those which he might have been able to get? At first sight a negative answer imposes itself, because the moral position of him who, until the filing of the suit, has continued in the firm conviction that his possession was lawful. He who was possessing in good faith continues in uncertainty until judgment is pronounced and his legal status is defined. The defects may be apparent or doubtful; the possessor in defending himself exercises a right, and in this legitimate defense he may conduct himself with temerity or not. Why should we place upon an equal scale of responsibility the possessor who commenced to possess in bad faith and him who commenced to possess in good faith, and notwithstanding the filing of the complaint even yet doubts, agitated

by the insecurities of his nebulous right, now questioned? And therefore the aforesaid reasons, which appear to have been inspired by the most pure and strict justice, lack firm foundation. The duty to pay to the legitimate possessor the fruits which might be received is not so much a just reproof of the bad faith as a legitimate consequence of the fault and negligence of the possessor. If the possessor, notwithstanding his conviction that he is not rightfully in possession, cultivates the estate with careful solicitude, and obtains the fruits which the soil is able to return to him, taking into account its fertility and the conditions of the year from an agricultural standpoint, the fruits which might have been received shall not be recoverable by anyone. If, then, the restitution of the fruits is correlative with the negligence or the fault of the possessor in bad faith in the use of that possession, it is obvious that if the possessor whose good faith has been interrupted with the commencement of the suit so conducts himself, counting from this last moment, with the fault or negligence, he must return to the victor not only the fruits which he shall have received, but also those which he could have received if he had proceeded in the use and enjoyment of the thing possessed with the care and zeal which the law exacts of the good father of a family." Scaevola, Compilation of vols. VIII. and IX., pages 696, 697.

4. The above discussion refers the inception of bad faith back to the service or answer in the main suit. That, of course, does not apply to the case at bar, for the court has already determined that there was no bad faith up to the time of its decree, April 14, 1910. The principle above involved, however, applies, that is that the decree declared Ochoa no longer entitled to the property, and therefore as an incident his detention

of it thereafter must have been in bad faith. The inception of a bad faith, therefore, was from the time of the decree.

The Supreme Court has construed the civil law to the same effect as these commentators in Green v. Biddle, 8 Wheat. 1, 5 L. ed. 547. It says: "By the civil law, the exemption of the occupant from an account for rents and profits is strictly confined to the case of a bona fide possessor, who, not only supposes himself to be the true owner of the land, but who is ignorant that his title is contested by some other person claiming a better right."

The authority of this old case has never been impeached.

5. It is evident, therefore, that the reimbursement for the detention of the land must be upon some other principle than that of interest upon its value. Mesne profits "consist of what the premises are reasonably worth annually, with interest at the time of trial." New Orleans v. Gaines, 15 Wall. 624, 21 L. ed. 215; New Orleans v. Gaines, 131 U. S. 202, 33 L. ed. 105, 9 Sup. Ct. Rep. 745. This is to be construed in connection with § 457 of the Porto Rico Civil Code to the effect that "a possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected." Of course, if Ochoa's contention were correct, that he had practically tendered the property, the liability would cease; but this has not been satisfactorily shown. It is true that this court would, upon proper showing, have issued a writ of possession; but it seems to be satisfactorily proved that this was not applied for because counsel for Ochoa stated that the land had been abandoned, and so possession could be had at any time. If it had been abandoned and Hernandez had failed to take possession, he could not now complain. In point of fact, however,

up to April 22, 1914, it is shown by letter of Ochoa to the tenant Lougriel that defendants had never changed the status of the property, and had never abandoned it.

6. It would seem from the evidence that there were several acres of coffee upon the property at the time of this court's decree, and that 50 cuerdas or acres were suitable for tobacco culture. The remaining 56 cuerdas were available for pasture, if not for profitable minor crops. There was a great deal of evidence as to these different crops, and how far they could be raised upon this land. The contention of the petitioners herein is that Ochoa should have acted like a good father of a family and have raised these crops, and, not having done so, should be liable nevertheless for their full value. There is no evidence that anybody tried to rent this property for a large value, but it would seem that the amount actually realized of $75 a year was nominal. This arrangement must have been simply to hold possession. Petitioners' contention is that the true rental value was $636 a year, which would amount to some $2,400 for the four years.

The court is unwilling to hold that a possessor of the nature of Ochoa in this case, while pursuing his remedy in the Supreme Court, is to be punished as an insurer of all the land could possibly have produced. In such case it would be better for the plaintiff always to remain out of possession. The true test is what the property can fairly be held to have actually produced, whether of crop or rent, taking the average run of years. The burden is upon the petitioner to prove his case, and the court is not convinced that this property could, under all the circumstances of uncertainty of title, being out of regular cultivation and distant in location, have been brought to produce, by renting or otherwise, more than half of the sum

above claimed. The civil law aims to punish a possessor in bad faith by making him pay what could fairly have been produced, but this refers primarily to a place under cultivation or use, and here must be construed in connection with the facts and uncertainties of an appealed case, which was in its inception one of good faith and becomes otherwise not so much in fact as by law. While there is little clear evidence on the subject, that does not help the petitioner, and the court is inclined to think that half of the extreme productive value, as to which their witnesses testified, would be the limit to which it should go. That is to say, it will allow the sum of $300 a year, with interest on the same from year to year, amounting in all to the sum of say $1,300. This does not differ greatly from what would be the legal interest on the appeal value as fixed by defendants themselves, which, while not conclusive, tends to show that the above amount is not unreasonable under all the circumstances of the case.

The master's report is modified accordingly, and a decree will be entered in favor of the petitioners for $1,300.

It is so ordered.